Van Voorhis, J.
The defendant appeals from a judgment of the Court of Special Sessions of the City of New York convicting him, by a divided court, of issuing and delivering to one M. Benjamin Baron two checks for $1,286 and $200, respectively, with intent to defraud, knowing that there were insufficient funds in or credit with the hank on which they were drawn to pay them, in violation of section 1292-a of the Penal Law.
*155 These checks, made by defendant on behalf of a corporation known as Stand Laboratories, Inc., were dated March 14, 1947, and were handed by defendant to Baron on that date. They were given to replace two similar checks in the same amounts, also payable to Baron, which had been given to him by defendant on February 28,1947. The first check for $1,286 was dated February 28th, and the first $200 check, although given also on February 28th, was postdated March 5th.
It is admitted that on February 28th, defendant and Baron entered into a written agreement for a joint venture for the purchase and sale of radio tubes, pursuant to which each was to supply specified capital. Defendant was to carry the venture into execution. The portion of capital for the venture to be supplied by Baron was agreed upon in the following language: “ That M. Benjamin Baron shall deliver to Kurt Stand [the defendant] the sum of Twelve Hundred Eighty-Six ($1,286.00) Dollars, which shall be used as a revolving fund to effectuate the purchase of said radio tubes.” Simultaneously with the payment of said $1,286 by Baron to defendant on February 28th, the latter gave to Baron his said check for $1,286 dated on February 28th, and the other check for $200 postdated March 5th. Baron’s interest in the venture was apparently to be evidenced by these checks, which could hardly have been expected to be paid immediately, and are thus provided for in said written agreement: ‘ ‘ That simultaneously with the delivery of said check of Twelve Hundred Eighty-Six ($1,286.00) Dollars to M. Benjamin Baron, dated the same date as the exchange for said check and a further check of Two Hundred ($200.00) Dollars representing profit to be realized in said transaction after the sum of Fifty ($50.00) Dollars shall be paid to Mr. Wyman for services rendered in connection with this transaction. That the parties hereto shall be deemed the joint owners of the radio tubes purchased and sold.” Then follow the signatures of Baron and the defendant, to which is subjoined the following legend, initialed by both parties:
“ Said tubes are to be purchased from
................ 30 Warren St. $ 590.00
Hy Moss 450.00
................ 40 E. 32nd St. $1286.00 ”
The theory of the prosecution is that the joint venture ended with the resale of these particular tubes, and that the $1,486 represented by both checks thereupon became payable to Baron, with the. result that the new checks dated March 14,1947, became *156 absolute obligations for the payment of this money. That these were the sole purchases contemplated by the venture, or whether the use of the words that the moneys supplied by the parties should constitute a “ revolving fund ” indicates that a series of transactions was intended, is involved in too much doubt to uphold a criminal conviction. The written document in referring to a “ revolving fund ” can readily be construed to imply, as defendant testified, that the capital of the venture was to be turned over repeatedly, and that the substitutional checks given on March 14th were not absolute obligations but were for a similar purpose as in the case of the checks which they replaced and which had been delivered February 28th.
Baron admitted on the witness stand, that on February 28th, he gave to defendant $1,286 in connection with an arrangement which he entered into “ with Mr. Stand to participate in the purchase and resale of radio tubes.” At the same time defendant gave him back the first checks, which have been mentioned, for $1,286 and $200. Manifestly, Baron did not receive these checks from defendant in the ordinary course of business, or with the expectation that they would be paid at once. In fact, he testified expressly that they were not to be used at once if defendant succeeded in obtaining certain radio tubes for their joint account.
Baron did testify that defendant told him on March 5th (the very day as of which the $200 check had been postdated), that “ He had completed the deal ”, and that he thereupon deposited the February 28th checks in his bank, which were returned for insufficient funds. On March 14th, as above stated, he procured the substitutional checks from defendant in the same denominations. He parted with no consideration for these renewal checks. Baron did not return the earlier checks and still holds all four of-them. He testified that defendant “ wanted to conform the same way that the other checks were drawn which he gave me.” It does not appear, and would seem to be immaterial, whether the earlier checks were made by defendant individually or by him as an officer of Stand Laboratories, Inc.
Defendant testified that he purchased the tubes in question and resold them on March 10th, but that before March 14th, he reinvested the proceeds in other radio tubes, in ostensible fulfillment of an understanding that the moneys advanced were to be used 1 c as a revolving fund to effectuate the purchase of said radio tubes.” Defendant admittedly used at least some of the proceeds of some of these sales to pay his individual creditors, but he finished the venture, so he testified, with 5,000 radio tubes *157 on hand, which he stated that he transferred to Baron to extinguish his obligation. Baron denied this, but Nathan Lefkowitz, who is in the radio parts business, testified that defendant brought what were apparently these tubes to his place of business, which he now holds for the account of Baron or Baron and the defendant, or for whoever owns them.
Section 1292-a of the Penal Law renders guilty of a misdemeanor “ Any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft or order for the payment of money * * * upon any bank or other depositary, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in or credit with such bank or other depositary for the payment of such check, although no express representation is made in reference thereto * * * ; and if money or property is obtained from another thereby is guilty of larceny and punishable accordingly.” The refusal by a bank to pay a check because of insufficient funds is made prima facie evidence of intent to defraud, and of knowledge that there are insufficient funds in or credit with such bank or other depositary.
In this case it is manifest that Baron was not defrauded by the delivery to him of the original checks for $1,286 and $200 on February 28, 1947. He knew that they merely evidenced his interest in the joint venture, and admits that they were not to be used except on the consummation of the venture. Although Baron asserts that this was not true of the checks in the same denominations given to him by defendant on March 14th, which he insists were given to him to close out his interest in the venture after it had been completed, defendant testified that when he delivered these checks on March 14th he told Baron that there was not money in the bank to meet them, and that he would have to hold them until such time as there were sufficient funds to meet them. Defendant is corroborated in this statement by Edwin Wyman, a broker who brought the parties together.
Although the defendant may have misappropriated funds of the joint venture by applying them to some extent in payment of his personal indebtedness, that would not necessarily render him guilty of having defrauded Baron by the making and delivery to him of these checks on March 14th. They were delivered to take the place of prior checks in the same amounts, which had not been delivered in the ordinary course of business, but to represent Baron’s interest in the venture. The statement in the agreement that these funds “ shall be used as a revolving fund ” indicates that not merely a single transaction but a series of *158 transactions in the purchase and sale of radio tubes may well have been contemplated. The defendant may have dealt sharply with Mr. Baron, and may even have misappropriated assets of the joint venture (the exact facts concerning which do not appear), but the nature of the transaction, and the circumstance that a considerable number of tubes are on hand with Lefkowitz, which have either been transferred to Baron or are the property of the joint venture, lead to the conclusion that the guilt of the defendant of the crime charged has not been established beyond a reasonable doubt. A criminal prosecution on these checks is not a substitute for an accounting of the joint venture. Whether defendant has been guilty of some other crime in the conduct of the venture has not been charged nor disclosed.
The judgment of conviction should be reversed and the information should be dismissed.
Glennon, P. J., Dore, Callahan and Shientag, JJ., concur.
Judgment unanimously reversed and the information dismissed.